IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LUIS VEGA MARTINEZ AND LIZVETTE REYES CUPELES, PERSONALLY AND ON BEHALF OF THEIR MINOR SON, J. E. V.R. AND DAUGHTER A.V.R. , <br><br>*Petitioner,* <br><br>v. <br><br>**HOSPITAL SAN ANTONIO INC, et als.** <br><br>*Defendant.* | **CIVIL NO. 18-1055 (DRD)** |

**OPINION AND ORDER**

**I.    INTRODUCTION**

Pending before the Court is a *Motion in Limine to Exclude the Opinion of Dr. Edwin Miranda* (the "Motion in Limine") filed by Defendant Hospital San Antonio, Inc., (hereinafter "HSA" and/or Defendant) (Docket No. 164), which was opposed by Plaintiffs (Docket No. 181)[1] and replied to by Defendant (Docket No. 197).

**II.    Motion in Limine to Exclude Plaintiffs' Expert Dr. Miranda**

In synthesis, Plaintiffs designated Dr. Edwin Miranda (hereinafter, "Dr. Miranda") as their expert witness. HSA filed a Motion in Limine to exclude his testimony and report, arguing that he is not qualified to testify as an expert in the pediatric and subspecialized fields. Specifically, HSA seeks the exclusion of Plaintiffs' expert Dr. Miranda as his testimony allegedly fails to comply with the requirements of Fed. R. of Evidence 702 and 703. See, Docket No. 164 at 25. Additionally, HSA alleges that Dr. Miranda's failure to comply with Fed. R. of Civil Procedure 26(a)(2)(B) and his inability to overcome the reliability threshold of <u>Daubert</u> and its progeny, warrants his

---

[1] On May 26, 2022, Plaintiffs filed a "*Motion to File Instanter Due to Technical Difficulties: Opposition to defendant's Motion In Limine To Exclude Testimony of Dr. Edwin Miranda and Opposition to Motion For Summary Judgement and Memorandum of Law*", attaching documents as Exhibit 1. (Docket No. 182) The Court considered the matters stated in said motion and admitted the motion with its attachment.

preclusion in the instant case. *Id.* In summary, according to HSA the basis for exclusion can be summarized in the following way:

> a. Dr. Mirada [sic], in as much was only a physician working in the emergency field, who does not have the knowledge, skill, experience, training and education to permit his testimony to be presented at trial in this case in the pediatric field and subspecialized fields. Therefore, Dr. Miranda is not sufficiently qualified in this case to assist the court
>
> b. The opinions, testimony, and expert report and bibliograph reference notified by Dr. Miranda are not premised on appropriate scientific data, medical facts or analyses, and as such, his opinions are fundamentally unreliable and subject to preclusion pursuant to FRE 702, 703, and Daubert and its progeny. Dr. Miranda testimony lacks reliability foundation. The bases for the opinion of Dr. Miranda are purely speculative and are not grounded in available factual and medical information.
>
> c. Dr. Miranda lacked medical data and/or reliable methodology and data to support his opinion. Dr. Miranda adopted, and basically cut and pasted the content of a Wikipedia Article. Wikipedia is not recognized as an authority and a reliable source….Dr. Miranda cited, used and adopted the bibliograph reference from Wikipedia, but the same do not support Dr. Miranda position. When Dr. Miranda was confronted with the bibliograph reference from Wikipedia, he mentioned that he did not use or consider the same for his opinion. Therefor at the end, Dr. Miranda lack reliable medical sources and more over no sources to sustain his opinion.
>
> Docket No. 197 at 2.

Plaintiffs filed an *Opposition to Defendants' Motion in Limine to exclude Testimony of Dr. Edwin Miranda* alleging that said motion is "insufficient to demonstrate he does not have the necessary scientific, technical or specialized knowledge, skull, experience training and education to form and opinion based upon sufficient facts and data, reliable principles, and methods, and applying the same to the case". (Docket No. 181 at 5). Specifically, Plaintiffs contest that Dr. Miranda "satisfies the first prong, the qualification test, and accurate data and information, in which he has founded his opinion based on the critical facts that are trustworthy and such opinion will certainly be helpful to the jury." *Id.* at 7. According to Plaintiffs, Dr. Miranda's expert report and opinion satisfies the Rule 703 requirement since "the type of information that Dr. Miranda relied upon is the type of information expert reasonably rely when forming opinions." *Id.*

Meanwhile, HSA replied to Plaintiffs' opposition by stating that Plaintiffs failed to controvert or refute the *Motion In Limine* with reliable, admissible and relevant evidence. See, Docket No. 197. Additionally, HSA argues that Plaintiffs' opposition "made reference to matters not presented, no [sic] admissible and/or not presented during discovery, and with the inappropriate and unsuccessful purpose to amend Dr. Miranda only report allowed in violation of Court Orders at this stage, not even relevant to an opposition to motion to exclude Dr. Miranda testimony at this stage of the proceedings." *Id.* at 2. HSA requested the Court to disregard the new information or evidence brought by Plaintiffs in said Opposition.

In order to determine whether to disqualify Plaintiffs' expert, Dr. Miranda, the Court will analyze his qualifications, the methodology behind the opinion, the facts underlying the opinion, and the link between the facts and Dr. Miranda's conclusions. *See*, Bourjaily v. United States, 483 U.S. 171, 175–176 (1987) ("Preliminary questions concerning the qualification of a person to be a witness . . . or the admissibility of evidence . . . should be established by a preponderance of proof.").

For the reasons set forth below, the Court **GRANTS** HSA's *Motion in Limine* (Docket No. 164).

**A. Rule 702 Requirements and Standard of Review**

Under Rule 702, an expert witness may provide opinion testimony only if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods;
>
> and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Rule 702 has two primary policy goals. First, the rule seeks "to promote the trier of fact's search for truth by helping it to understand other evidence or accurately determine the facts in

dispute." 29 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6262 (2d ed.) (internal citations omitted). Second, the rule "seeks to preserve the trier of fact's traditional powers to decide the meaning of evidence and the credibility of witnesses by placing limits on the admissibility of expert opinion." Id. In sum, Rule 702 imposes on experts the duty to employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). Courts carrying out their gatekeeping functions under Rule 702 and Daubert are to have "considerable leeway" in determining reliability, as well as in reaching its conclusions under the Rule. Id. In sum, "Rule 702 grants the [Court] the discretionary authority, reviewable for its abuse, to determine reliability in light of the particular facts and circumstances of the particular case." Id. at 158; see United States v. Jordan, 813 F,3d 442, 445 (1st Cir. 2016) ("Absent a material error of law, we will not second guess such a discretionary determination unless it appears that the trial court 'committed a meaningful error in judgment.'")

"Many aspects of science are a mystery to laymen without the aid of experts. In the world of the blind, the one-eyed man is king; and Daubert relevancy is the sentry that guards against the tyranny of experts." Samaan v. St. Joseph Hosp., 670 F.3d 21, 35 (1st Cir. 2012). Accordingly, before admitting it, the Court must ensure that expert testimony complies with the Daubert rule that expert testimony be based on scientific or technical knowledge beyond "subjective belief or unsupported speculation." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Courts may exclude theories and conclusions when their sole connections to the data are the expert's own dogmatic statements. Milward v. Acuity Specialty Products Grp., Inc., 639 F.3d 11, 15 (1st Cir. 2011) ("conclusions and methodology are not entirely distinct from one another" and "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert.") (internal citations omitted).

Trial courts must also ensure that expert testimony is tied to the facts of the case in a way that aids the jury in carrying out its fact-finding functions. See Daubert 509 U.S. at 591 (expert testimony which does not "fit" the facts of the case is "not relevant and, ergo, not helpful"); see also Milward v. Rust-Oleum Corp., 2016 WL 1622620, at *3 ; ---F.3d ---- (1st Cir. 2016)(courts must "serve as the gatekeeper for the expert testimony by 'ensuring that [it] . . . both rests on a reliable foundation and is relevant to the tasks at hand.'")(quoting Daubert, 509 U.S. at 597). On the requirement that the testimony "help the trier of fact," Federal Practice and Procedure provides the following guidance:

> clearly, expert testimony does not "help" if it is unrelated to facts at issue or is based on factual assumptions that are not supported by the evidence. Thus, an expert's demonstration that does not accurately reconstruct the facts of the case at bar fails to "help" the trier of fact. Expert testimony also fails to "help" where the reasoning behind that testimony is so illogical that it cannot affect the probabilities of the existence of facts at issue. In a direct echo of Rule 403 analysis, some courts conclude that expert testimony fails to help if unfair prejudice outweighs probative value or if the testimony is very confusing or misleading. Similarly, courts have concluded that expert testimony does not help where it is ambiguous.

Wright & Miller § 6265.2 (emphasis ours).

In addition to not being speculative, reliable testimony "must be supported by appropriate validation—i.e., 'good grounds,' based on what is known." Daubert 509 U.S. at 590. Thus, the outcome determinative prong in the Court's analysis is whether the "principles and methodology [employed by the expert witness]" are reliable. Id. at 595. The Court need not focus extensively on the expert's conclusions. Id. However, it is important to emphasize the requirement that an expert's testimony be reliable at each and every step. See Knight v. Kirby Inland Marine Inc., 482 F.3d 347, 354–355 (5th Cir. 2007). The reliability analysis applies to all aspects of expert's testimony: the methodology, the facts underlying expert's opinion, and the link between the facts and conclusion. Id.

With regards to expert qualifications, the First Circuit has held that "prior to trial, the Court must "determine whether the putative expert is qualified by knowledge, skill, experience, training

or education." Mitchell v. United States, 141 F.3d 8, 14 (1st Cir. 1998) With regards to the Court's authority, the First Circuit has held that a "district court enjoys substantial discretion to decide whether to admit or exclude relevant expert testimony". *Id.* In summary, the First Circuit has held that:

> When faced with a proffer of expert testimony, the district court must determine whether the expert witness is qualified and has specialized knowledge that will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed.R.Evid. 702; *see generally United States v. Sepulveda,* 15 F.3d 1161, 1183 (1st Cir.1993) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469 (1993)), *cert. denied,* 512 U.S. 1223, 114 S.Ct. 2714, 129 L.Ed.2d 840 (1994). First, the court has broad discretionary powers in determining whether or not the proposed expert is qualified by "knowledge, skill, experience, training, or education." Fed.R.Evid. 702; *see generally Richmond Steel, Inc. v. Puerto Rican Am. Ins. Co.,* 954 F.2d 19, 21 (1st Cir.1992). Next, the court decides if the proposed subject matter of the expert opinion properly concerns "scientific, technical, or other specialized knowledge." Fed.R.Evid. 702. Finally, the court performs a gatekeeping function to ascertain whether the testimony is helpful to the trier of fact, *i.e.,* whether it rests on a reliable foundation and is relevant to the facts of the case. *See Vadala v. Teledyne Indus., Inc.,* 44 F.3d 36, 39 (1st Cir.1995); *see also Daubert,* 509 U.S. at 591, 113 S.Ct. at 2795 (characterizing this consideration as one of "fit.").

Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificacion, 345 F.3d 15,25 (1st Cir. 2003)

Finally, "the trial court must determine that the proffered expert witness is "qualified as an expert by knowledge, skill, experience, training, or education" **before permitting his testimony to be presented to the jury.**" *Id.* (emphasis ours)

HSA posits that Dr. Miranda is not sufficiently qualified in this case to assist the court since he was "only a physician working in the emergency field, who does not have knowledge, skill, experience, training and education to permit his testimony to be presented at trial in this case in the pediatric field and subspecialized fields." (Docket No. 164 at 1). However, in Mitchell the Court of Appeals held that "the fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir.1985); *cf.* Letch v. Daniels, 401 Mass. 65,

514 N.E.2d 675, 677 (1987) ("A medical expert need not be a specialist in the area concerned nor be practicing in the same field as the defendant.")." Mitchell, 141 F.3d 8 at 16. The First Circuit Court of Appeals has also indicated that "it would be an abuse of discretion to exclude testimony that would otherwise "assist the trier better to understand a fact in issue," simply because the expert does not have a particular specialization." E.L.A.C. v. Hosp. Hermanos Melendez, Inc., 17 F. Supp. 3d 158, 160 (D.P.R. 2014) (citing, Gaydar v. Sociedad Instituto Gineco-Quirurgico y Planificación, 345 F. 3d 15, 24-25 (1st Cir. 2003) Additionally, the First Circuit has recognized that although under Rule 702 "an expert must possess some specialized knowledge of the filed in which he purports to be an expert, but defendant is incorrect insofar as it challenges the experts here for not having specialized knowledge as to the specific question at issue." Payton v. Abbott Labs, 780 F.2d 147, 155 (1st Cir. 1985) (holding that "the fact that the physician is not a specialist in the field in which he is giving his opinion affects not the admissibility of his opinion but the weight the jury may place on it."

As discussed above, trial courts have a great latitude in assessing whether the expert testimony will materially assist the jury. Although the Court plays the role of the gatekeeper, it is only as to two aspects: (1) the existence of sufficient facts and/or data to allow an expert to reach a conclusion and; (2) the reliability of the principles and methods used to arrive at those opinions. Bado-Santana v. Ford Motor Co., 364 F. Supp. 2d 79, 85 (D.P.R. 2005) Within a trial court's discretion regarding expert testimony is also its decision to hold a *Daubert* hearing. Since "when no novel challenge is raised, it is unnecessary to hold a *Daubert* hearing." See Martinez-Morales v. Victaulic Co. 2013 WL 2443870 (D.P.R. June 5, 2013)(citing United States v. Pena, 586 F.3d 105, 115 (1st Cir.2009)

### B. Federal Rule of Civil Procedure 26(a)(2(B)

In order to be admissible, expert reports must also comply with Federal Rule of Civil Procedure 26(a)(2)(B). Fed. R. Civ. P. 26(a)(2)(B) requires that expert reports contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts or data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

These requirements make it clear that Rule 26(a)(2)(B) "call[s] for parties to make explicit and detailed expert disclosures." Santiago Diaz v. Laboratorio Clinico Y De Referencia Del Este And Sara Lopez, M.D., 456 F.3d 272, 276 (1st Cir. 2006) The District Court has further held that "expert-related disclosures are insufficient when they consist of "sketchy and vague descriptions of anticipated opinions or areas of anticipated testimony." Rivera Marrero v. Presbyterian Cmty. Hosp., 255 F. Supp. 3d 290, 296–97 (D.P.R. 2017). In the instant case, the Court ordered the parties to conclude expert discovery on or before December 31, 2021. *See*, Opinion and Order at Docket No. 150. Thus, as HSA correctly points out, Plaintiffs are barred from supplementing Dr. Miranda's report.

### C. Dr. Miranda's Scientific, Technical or other Specialized Knowledge

HSA argues that Dr. Miranda lacks the qualifications to be considered an expert in the present case. To prove this, HSA points out to the Court that Dr. Miranda's experience consists, among other things, of the following:

> i. Dr. Miranda's certification for emergency medicine was granted by the Puerto Rico Medical Examiner board in 1991 by the grandfather clause. (Docket No. 164 at 4)
>
> ii. Dr. Miranda's license expired in 2019. *Id.*

    iii. Dr. Miranda did not complete a residency nor was he trained in emergency medicine. *Id.*

    iv. Dr. Miranda is not currently taking "any continued education with an organized educational institution." *Id.*

    v. Dr. Miranda accepted during his deposition that he has not received training nor practiced in the following areas: dermatologist, internal medicine, pediatrician, hospitalist nor infectologist. *Id.* at 5 (referring to page 24, line 24, page 26, line 5 of Dr. Miranda's deposition at Exhibit 2).

    vi. Dr. Miranda's practice was in emergency medicine. *Id.*

    vii. "local courts have limited his testimony as an emergency physician based on experience, not as certified medicine physician. In another case testimony he was limited to the emergency room, not during hospitalization. (Refer to page 28, line 17 -page 30, lines 25 of Dr. Miranda' deposition at Exhibit 2)." *Id.*

    viii. Dr. Miranda has not been offered to testify as a pediatrician nor in the pediatric field of an emergency room. *Id.*

    ix. Dr. Miranda has not diagnosed nor treated a patient with Stevens Johnson Syndrome, Coxsackie, scalded skin syndrome nor a vasculitis. *Id.*

    x. Dr. Miranda does not know if the Stevens Johnson Syndrome has a higher ratio and rareness in adults or children. *Id.*

With regards to Dr. Miranda's qualifications, Plaintiffs in their Opposition allege that Dr. Miranda's deposition testimony demonstrates that Defendant has "voided referring at all costs to those circumstances which can lead this Court to a sound showing that Dr. Miranda has the knowledge, skill, experience training and education to be qualified as an expert in emergency medicine, as an emergency physician, an experienced emergency physician, as a certified emergency physician, and expert in general medicine in this case." (Docket No. 181 at 3). In an

attempt to demonstrate to the Court that Dr. Miranda has the qualifications necessary to serve as an expert in this case, Plaintiffs rebuttal Defendant's allegations by including the following facts:

xi. "Dr. Miranda specialized in emergency medicine, attained a Certification for Emergency Medicine by the Puerto Rico Medical Examiner Board in 1991 by the Grandfather's Clause, with a combination of both experience and more than 7,000 hours and also more than 600 credits in continued medical education. He retired in 2018 and his license expired in 2019. Dr. Miranda's deposition marked as Exhibit 1, page 16, line 19-25, page 17, line 1-3, page 24, lines 22-23." *Id.* at 4.

xii. "Dr. Miranda had a teaching appointment as a Professor at the University of Puerto Rico School of Medicine, from 1986 to 1994 teaching interns and residents in his practice of emergency medicine. Refer to Dr. Miranda's deposition attached and marked as Exhibit 1, page 16, lines 19-25, page 17, lines 1-3, page 17, lines 1-11, page 25, lines 1-8." *Id*

xiii. "Dr. Miranda, since having retired in 2019, is not taking credits for continued education, he is taking without credits, for example for expert witness work, albeit he did with an organized educational institution until 2016 for his license renewal that ended in 2019. Refer to Dr. Miranda's deposition marked Exhibit 1, page 22, lines 12-25, page 23, lines 1-10." *Id.*

xiv. "Dr. Miranda worked for a long time in private hospitals but moved to the Puerto Rico Medical Center and the Puerto Rico Medical Administration Services Medical Center in 1994 and worked at the San Pablo Hospital in 2009 and 2010. Refer to Dr. Miranda's deposition marked Exhibit 1, page 23, lines 19-25, page 24, lines 1-2, lines 4-23." *Id.*

xv. "Dr. Miranda has testified as an expert in several cases as an emergency physician, an experienced emergency physician, as a certified emergency

       physician. Please refer to his C.V. attached hereto marked as Exhibit 2. Also refer to Dr. Miranda's deposition marked Exhibit 1, page 28, line 17, page 30, lines 8-12, page 30, line 25." *Id.*

  xvi.  "Dr. Edwin Miranda is an experienced expert witness, and said practice takes up a significant portion of his professional activities since his retirement from active medical practice. Please refer to his C.V. attached hereto as Exhibit 2. Making an expert witness report is undoubtedly a regularly conducted activity of the expert witness occupation. Dr. Miranda's report in this case was made at or near the time of his review of the case and the supporting literature while he was still a practicing specialist in emergency medicine." *Id.*

With these additional facts, and by including Dr. Miranda's *curriculum vitae*, Plaintiffs attempt to rebuttal Defendant's enquiring of Dr. Miranda's qualifications. However, Plaintiffs do not show the Court how these additional facts make Dr. Miranda a qualified expert nor how this experience will aid the Court in understanding the particular facts of the present case. Plaintiffs merely state that Defendant's *Motion in Limine* "is clearly insufficient to demonstrate he does not have the necessary scientific, technical, or specialized knowledge, skill, experience training and education to form and opinion based upon sufficient facts and data, reliable principles, and methods, and applying the same to the case." *Id.* at 5.

In order for the Court to determine if the above-mentioned qualifications are enough to satisfy the qualification test, the Court must take into consideration the facts being examined. The instant case involves a minor, J.E.V.R., who was taken to the Emergency Room at HSA at approximately 11:47 a.m. on February 4, 2017, because he was showing symptoms of fever, headache and general discomfort since the day before. (Docket No. 1 at ¶19). According to Plaintiffs, several medications were administered to J.E.V.R., including Rocephin. Plaintiffs allege that "Dr. Rodríguez deviated from the generally accepted standards of medical practice.

Also, Dr. Rodríguez incurred in medical malpractice in the treatment by ordering the administration of Rocephin to minor J.E.V.R., when said medication is contraindicated and/or not used in the medical community to treat viral infections and is not the first line of treatment for the diagnosis reached" *Id* at ¶21. According to Plaintiffs, "in reaction to the Rocephin, J.E.V.R. developed skin injuries that became necrotic, which were increasing until they covered almost 38% of his body." *Id.* at ¶31. Plaintiffs allege that "the medical staff gave different diagnosis to J.E.V.R. relatives, maintaining them in a state of uncertainty and anguish, without reaching to the correct diagnosis and/or treatment for almost 4 days. On February 9, 2017, through a medical consultation, Dr. Soto, skin specialist, for the first time suspected a "Steven Johnson Syndrome" (hereinafter "SJS")" *Id.* at ¶32. Thus, in the instant case an expert is needed to assist the trier of facts to understand the correlation of the medications administered to J.E.V.R. during his stay to his injuries, if any, as well as a general understanding of SJS. In the *Proposed Joint Initial Scheduling Conference Memorandum*, Plaintiffs identified Dr. Miranda as an expert who would "testify about his expert opinion on J.E.V. R.'s health condition, procedures to diagnose and treat him at HSA and PRCH, the results thereof and cause of damages, and everything on his expert analysis in this case." (Docket No. 66 at 38-39).

According to Dr. Miranda's own testimony, he does not have any training nor practice in dermatology, internal medicine, nor in the pediatric field. (Docket No. 199, Exhibit 1, Dr. Miranda's Deposition Transcript, page 25-26). Dr. Miranda's training and practice has been limited to emergency medicine. *Id.* However, as discussed above, Dr. Miranda does not need to be a specialist in the areas concerned in the instant case. Thus, his lack of training in sub-specialized area does not, itself, preclude him from being an expert in the instant case. HSA incorrectly challenges Dr. Miranda's qualifications for not having specialized knowledge in the field in which he is giving his opinion. This lack of specialized knowledge could affect the weight that the jury may place on Dr. Miranda's testimony, but not his admissibility.

However, Dr. Miranda needs to have **some** kind of relevant knowledge in order to be considered an expert in the instant case. Knowledge that will assist the trier of fact to understand the evidence or determine a fact in issue. The Court recognizes it has broad discretion to determine if Dr. Miranda is a qualified expert based on knowledge, skill, education and training. Pursuant to Dr. Miranda's testimony and his *curriculum vitae*, he is specialized in emergency medicine, "attained a Certification for Emergency Medicine by the Puerto Rico Medical Examiner Board in 1991 by the Grandfather's Clause, with a combination of both experience and more than 7,000 hours and also more than 600 credits in continued medical education. He retired in 2018 and his license expired in 2019. Dr. Miranda's deposition marked as Exhibit 1, page 16, line 19-25, page 17, line 1-3, page 24, lines 22-23." (Docket No. 181 at 3-4) The Court notes that his expert report was rendered on September 17, 2017, prior to having his license expired. *See*, Exhibit 1, Expert Report, Docket No. 164) According to Plaintiffs, Dr. Miranda's *curriculum vitae* states that he has been consulted as medical expert witness in 596 cases including both state and federal court. (Docket No. 181, Exhibit 1, Dr. Miranda's *curriculum vitae*). Dr. Miranda was an emergency department physician from 1994-2018. *Id.* at 3. He was also a professor and clinical instructor at the University of Puerto Rico School of Medicine from 1983-1994. *Id.* Taking this experience into consideration, the Court finds that Dr. Miranda has the knowledge, skill, education and training necessary to be deemed qualified in the present case with regards to "J.E.V. R.'s health condition, procedures to diagnose and treat him at HSA and PRCH, the results thereof and cause of damages, and everything on his expert analysis in this case." (Docket No. 66 at 38-39).

Dr. Miranda does not need to be specialized in the field of dermatology or pediatrics to be considered a qualified expert in the instant case. J.E.V.R. arrived to and was treated at HSA's emergency room, Dr. Miranda has had ample experience in the emergency medicine field. Therefore, contrary to Defendant's allegations, Dr. Miranda's lack of specialization is not enough to render him unqualified to testify in the instant case.

As discussed above, pursuant to Rule 702, for Dr. Miranda's testimony to be admissible it must be both reliable and relevant. According to Dr. Miranda's testimony, he concluded that "the cause that led the patient to seek medical attention on February 4, 2017 was an infection from a virus and apparently Coxsackievirus, serotype B. Therefore, the non-indicated and unnecessary administration of Rocephin®, caused Steven Johnson syndrome." (Docket No. 181, Exhibit 2 at 20) According to Dr. Miranda's own testimony, he has never diagnosed for SJS, Coxsackie nor Vasculitis during his practice as a physician. (Docket No. 199, Exhibit 1, Dr. Miranda's Deposition at page 39, lines 5-18). Dr. Miranda does not know if SJS is rarer in children than in adults. *Id.* at pages 128-129. With regards to the foundation of Dr. Miranda's expert report, during his deposition, Dr. Miranda admitted the following:

> Q. So, Doctor, in order to go faster with this, what you did was that you used the Wikipedia on Stevens-Johnsons syndrome and copy [sic] the citations, the comments, and put it in the report, using the citation that on the Stevens-Johnson syndrome was cited. Am I right or wrong?
>
> A. Right

*Id.* at page 55, lines 7-16. *See also*, Pages 57-58.

Dr. Miranda further admitted that he did not go to each of the text he cited, he "used it from the Wikipedia cited literature". *Id.* at pages 60-61. Specifically, Dr. Miranda admitted that the references on pages 26 and 27 of his expert report are the same references included in the Wikipedia article about the SJS. *Id.* Dr. Miranda recognized that Wikipedia is not a medical authority. However, he added that "it mentions books of medicine and recognized journals pertinent to medicine and recognized worldwide." *Id.* at page 48, lines 3-8. He also stated that Wikipedia is a "good source of information because those can't be modified." *Id.* at page 52, lines 16-21. However, Defendant's attorney made the following question:

> Q. The question is, Doctor, you did not go to each of those text or you did not go to each of those references that are on page 26? You just used it from the Wikipedia cited literature, correct?
>
> A. That is correct.

*Id.* at pages 60-61.

In fact, Defendant's included as Exhibit 3 to their *Motion in Limine* the Wikipedia article relating to SJS. The Court can confirm that all of the references included in Dr. Miranda's Expert Report are references included in the footnotes for the Wikipedia article. *See*, pages 8-6 of Docket No. 164, Exhibit 3, Wikipedia Article and Docket No. 181, Exhibit 2, Dr. Miranda's Expert Report page 26-27.

During the deposition, Dr. Miranda stated that when the patient arrived on February 14, 2017, he had flu-like symptoms. *Id.* at page 62 line 23. Defendant's counsel questioned Dr. Miranda if these were the initial symptoms of SJS. To which he replied "no" *Id*. at page 62. Dr. Miranda's testimony was later rebutted by his own expert report which states that "early symptoms (for SJS) include fever and flu-like symptoms" (Docket No. 181, Exhibit 2 at page 8) With regards to the time between the exposure of a medication and SJS, Dr. Miranda stated he had never seen medical literature that states that the time between exposure and SJS was no less than four days. *Id.* at page 76, lines 23-34. However, as noted by Defendant's the Wikipedia article used by Dr. Miranda for his expert report, clearly states that "SJS and TEN most often begin between 4 and 28 days after culprit drug administration" (Docket No. 164, Exhibit 3 at page 3). During his deposition, Dr. Miranda stated that he did not remember what the ALDEN algorithm category meant, nor did he know if with that system could be established which medication were more propense to cause SJS than others. (Docket No. 199-1, Exhibit 1, page 84-85) However, the references he included in his report stated "…ALDEN may be a practical objective tool that allows immediate causality assessment of drugs in SJS and TEN without the need for expensive case control analysis in the future". (Docket No. 164, Exhibit 7 at 6)

To ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." Figueroa v. Simplicity Plan de Puerto Rico, 267 F.

Supp. 2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner can cause the expert witness and his report to be eliminated from trial." Id. (citing Justo Arenas & Carol M. Romey, Professional Judgement Standard and Losing Games for Psychology, Experts and the Courts, 68 Rev. Jur. U.P.R. 159, 180 (1999)). After reviewing Dr. Miranda's testimony during the deposition and his expert report, the Court finds that Dr. Miranda's expert report lacks a reliable foundation to reach his conclusion that the administration of Rocephin caused SJS in the patient. Dr. Miranda cherry picks the sources that best fit his conclusion, for example, Dr. Miranda's expert report clearly states that "no reliable test exists to establish a link between a particular drug and Stevens-Johnson syndrome for an individual case" (Docket No. 181, Exhibit 2 at page 9) Dr. Miranda reaches the conclusion that the administration of Rocephin, caused Steven Johnson Syndrome based on "it's interpretation of findings and facts on pathophysiological evolution." (Docket No. 191, Exhibit 1 at page 72)   Although Dr. Miranda's lack of specialization does not render him incompetent to be qualified as an expert, his lack of experience with the specific facts at issue and the lack of accepted methodology based on substantial scientific, technical, or other specialized knowledge in his report, renders his report inadequate for the present case. In Mitchell, the First Circuit held that an internist with a specialty in hematology and oncology was qualified to opine on the standard of care that should have been met by a gastroenterologist performing a colonoscopy. However, in said case the internist had testified that he "had been consulted over 100 times by gastroenterologists seeking advice on the proper treatment for patients on anticoagulant medication who were scheduled to undergo colonoscopy." Mitchell, 141 F.3d 8 at 16. However, this is not the case with Dr. Miranda. The Court finds it difficult to conclude that Dr. Miranda will aid the trier of facts in understanding SJS, Coxsackie, Scalded Syndrome, and Vasculitis when he has never treated, nor diagnosed a patient with the same.

      Dr. Miranda further lacks experience with the conditions relevant to the instant case, his expert report lacks reliable principles and methods to reach his conclusion. Dr. Miranda's report

does not satisfy the reliability requirement since "to determine whether testimony is sufficiently reliable […] a district court must determine whether it is "based on sufficient facts or data," was "the product of reliable principles and methods," and whether the expert "reliably applied the principles and methods to the facts of the case." Packgen v. Berry Plastics Corp., 847 F.3d 80, 85 (1st Cir. 2017) (citations omitted)

Plaintiffs argue that Dr. Miranda "at no point had Dr. Miranda cited Wikipedia as medical authority but rather as a guide and source of plain language to simplify explanations, while at the same time based on journals and publications that are well established and can be relied upon." (Docket No. 181 at 9) The Court considers Wikipedia a good starting point to have a general knowledge of what SJS is. However, all of the citations included in Dr. Miranda's report are from the Wikipedia article he used. Although Dr. Miranda argues that those citations include medical journals, the truth is that per Dr. Miranda's own testimony he did not go to each of the references included on page 26 of his report. *See* (Docket No. 199, Exhibit 1, Dr. Miranda's Deposition at page 61, lines 1-6). Plaintiffs and Defendant have a different view on the reliability of Wikipedia. However, this Court has to agree with Defendant that Wikipedia is not a reliable source, particularly because, contrary to Dr. Miranda's testimony, anyone can edit the content of a Wikipedia article. *See,* Nazario Sanchez v. Hospicio La Paz 2016 WL 8671918, (D.P.R. Sept. 30, 2016) ("Wikipedia is not a reliable source for legal caselaw and analysis"), Du Nguyen v. Astrue, 2012 WL 975674, at *6 (D. Me. Mar. 21, 2012) ("Wikipedia has not been shown to this court to be a reliable medical reference.") Dr. Miranda's own testimony fails to show that his report is supported by an accepted methodology based on substantial scientific or specialized information. Dr. Miranda's report even omits mentioning the applicable standard of care that Defendant's should have met. Therefore, the Court understands the opinion lacks any reliable methodology, authority or basis upon which to conclude that there was a deviation from the standard of care.

### III.     CONCLUSION

For the reasons set forth herein, the Court finds that Dr. Miranda's report and proffered testimony do not fulfill the requirements of Fed. R. Evid. 702, Fed. R. Civ. P. 26(a)(2)(B) and the applicable case law. Wherefore, Defendant's motion to exclude the testimony of Plaintiffs' expert witness at Docket No. 164 is hereby GRANTED.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 28th day of September 2022.

*S/Daniel R. Domínguez*
Daniel R. Domínguez
United States District Judge